May it please the Court, Jack Winters on behalf of the Appellant. Insurance Code Section 10144 of the California Insurance Code is intended to deal with an insurance company's determination to use mental impairments as a basis to limit coverage. It does not require an insurance company to offer any particular type of coverage. Rather, what it does is it says if, in fact, you are offering life or disability insurance or offering an annuity and you wish to use a mental impairment to limit coverage, charge a higher price, you have to justify it. That's all it does. This is fairly common for, in my experience, for insurance companies to limit the amount of coverage they will have for mental impairments, disability insurance, or even, if I recall, health coverage, whether it be two years or three years. And you think all of those kinds of provisions are banned in California? Is that your argument? Well, in health policies, we have parity. In short-term disability policies, we now have parity where severe mental illness is involved. But, Your Honor, it's absolutely correct. Historically, I'm not correct. I'm asking a question. Oh, I'm sorry. In my predicate? Yeah. Your predicate of the question is absolutely correct. Historically, the companies have used these limitations. But that is not a provision found or a basis to avoid explanation in the statute. No, I mean, my question, I mean, I gave you the predicate, and my question was you think in California all of those are illegal. No, I don't think we don't know whether or not they're illegal. You have to look at the actual exclusion or limitation that's involved. And you have to say they give unlimited coverage for cancer, but only two years of coverage for mental disability. Right. And those are all illegal in California. If, in fact, if, in fact, there is no actual basis for that limitation, yes. It's not justified. That's exactly what the statute says. Well, it's not exactly what the statute says. Well, it says except where the It says something that might be interpreted that way, but it's not exactly what Well, Your Honor, it says except where the refusal, limitation, or rate differentiation is based on sound actuarial principles. This is which section? This is section 10144. It says when an insurance company Let me get to it. When an insurance company issues, provides, or administers a policy I'm sorry, where, I don't see it. It starts by saying no insurer. It doesn't say when. I'm just trying to figure out where are you reading it from. I'm sorry, 10144, Your Honor. I'm looking at it. It says no insurer issuing, providing, or administrating any contract or individual or group insurance providing life, annuity, or disability benefits. And we go down, what we're primarily dealing with here, limit the amount, extent, or kind of coverage available. When that happens, or they charge a differential rate for the same coverage solely because of a physical or mental impairment except where the refusal, limitation, or rate differential is based on sound actuarial principles or is related to actual or reasonably anticipated experience. They shall not do it. So it's what it says. The other thing is you can't treat insurance differently because some of them have a mental impairment. So you can't say people with a mental impairment get a certain kind of insurance, people who don't have a mental impairment get a different kind of insurance. To me, just sort of reading it doesn't look to me like this has to do with the kind of coverage you offer. It has to do with treating different insurers the same way. With due respect, Your Honor, the statute specifically says if the kind of coverage available. That's what the statute says. If the kind of coverage available to an individual is different because of a physical or mental impairment, then there has to be an absolution. They all get a two-year limitation on mental impairments. And we're not treating the ones that have a mental impairment now differently from those that don't have a mental impairment. We're treating them all the same, and they all get two years of coverage for mental impairments. Your Honor, perhaps if I changed the type of insurance, I could better explain what we're arguing in this case. Imagine that the insurance. I understand that what you're offering is a possible explanation. I'm just telling you that to me it looks like it's at least capable of being interpreted the way the district court did, which is what I think I've explained. Well, Your Honor, obviously if you think it's capable of being interpreted that way, that's reasonable. However, if we actually look at the actual purpose of this statute, this statute... Let me, let me, let me, let me, let's say you're saying it is reasonable. There are two reasonable constructions. Would we go with that? I mean, if this were, if this were a federal statute, we'd say we'd go see what the administrative agency under Chevron would give us. Let's say there are, in fact, two possible constructions of the statute. They're both reasonable. Where do we, to whom do we defer, if anybody? Do we make the decision as to which is more reasonable? We go to the only evidence we have of legislative purpose, and that's the Model Act. Which doesn't help you at all. Well, I disagree, Your Honor. I think the Model Act... Doesn't help you much. Well, when an insurance company, when an insurance company decides to utilize an exclusionary provision, what it's doing is treating a class of people differently. That's what the Model Act is intended to do. And that class of people that are being treated differently, it does not matter if they're impaired before, during, before the policy is issued, they become a participant or after. What this provision does, it says to insurance companies, if for any reason you're going to use a mental or a physical impairment to limit coverage, we want you to explain why you're doing it. Doesn't the Model Act, referring to exactly this kind of statute, uphold standards position? No, I disagree completely. We believe the Model Act actually says the opposite. It says you're not supposed to make rate differentials. You're not supposed to treat people differently because of this provision unless you can explain why. That's what this is. If I can just give the Court one example. Imagine that in this situation, standard was selling an accident disability policy. If you got in an accident and got physically injured, you got payments. But in that policy, they said we're going to exclude or limit the amount of coverage you get if that accident is contributed in some fashion by a mental impairment. That use of a mental impairment or a physical impairment would trigger the second prong of this test. We gave, I would ask the Court, I urge the Court to look at 101-4-5. It's the statute dealing with blindness. Blindness does not have the two prong test. In the State of California, you cannot sell a policy. You cannot issue a policy. You cannot write a policy that limits coverage because you're blind. It's not allowed. It is, in fact, a parity provision. 101-4-4 is not a parity provision. It's asking and telling the insurance companies when, in fact, you use this provision or use an impairment, physical or mental, you have to explain why. Because that is, in fact, a form of discrimination if there's no justification. I see all my time is left, gone. Thank you very much, Your Honor. Okay. We'll hear from Standard. Good morning. Jacqueline Herring on behalf of all of the appellees. I think the Court's threshold question sort of frames the issue very nicely here. There's a clear distinction between a statute such as 101-44 that's an anti-discrimination statute and the parity statutes. And that's found in the specific language. 101-44 and anti-discrimination statutes prohibit specifically identified conduct because of a mental or physical impairment. A parity statute requires particular coverage for severe mental impairment. And yet what Nelson is arguing in this case is that the failure to provide coverage for both mental and physical equally is a violation of the anti-discrimination statute. And 101-44 does not prohibit that conduct. It prohibits four very specific types of conduct. Refusal to insure, refusal to continue to insure, limit the coverage available to an individual, or charge a higher rate solely because of a physical or mental impairment. And none of that occurred here. Availability and access. Let's take refusal to insure. Let's say it said you will have disability coverage for any disability other than mental impairment. Is that covered by this? By this statute? No, Your Honor. This statute doesn't regulate the content of insurance policies. And the California legislature within the past few years has passed a statute that specifically regulates disability coverage that needs to be available, and it specifically chose to limit that requirement to short-term policies that are two years or less. But this statute itself, 101-44, does not mandate any particular coverage terms. And that's, again, sort of the key distinction between a discrimination statute and a parity statute. Discrimination is supposed to be a shield against discriminatory conduct because of someone's disability. None of these provisions were added because of Ms. Nelson's disability. These are standard provisions that were available to everybody at Countrywide. Paid for 100% by the employer, this is simply the coverage that the employer chose to offer for free to all of its employees equally. She had exactly the same coverage at exactly the same cost, and under exactly the same conditions as everybody else. And this court in the Weyer decision, Weyer v. 20th Century Fox, considered these same arguments about discrimination in 24-month limitations in the context of the ADA and a Washington statute that prohibited conduct based solely because of disability. And the court said that if you have these coverage distinctions that are equally applicable to all, then the access to coverage hasn't been restricted. And those types of provisions are not discriminatory. It does not violate Section 101-44. Counsel, in his argument, is trying to set up the escape valve from the statute, the except this, except if you have actuarial justification, as some sort of gateway. You must have actuarial justification if you want to do these things. And that's not the way the statute is written. There must be a violation of the statute before we look at whether the safety valve and the escape hatch applies. If the statute itself has not been violated, you don't need to worry about whether there's an exception that would save you from that violation. And of course, there's no more case, State case law on this. Do you think this is the kind of thing we ought to refer to the California Supreme Court? No, Your Honor. And part of that is, again, it's clear in the statutory language. This is a statute that prohibits conduct because of, solely because of, an individual's impairment. It doesn't address the content. And the California legislature, again, very recently did address the content that's required, and specifically acknowledged that the insurance commissioner has approved plans that have these 24-month maximum benefit periods for mental conditions. Do we owe the commissioner any deference? It's part of, only if the court determines that the statute at issue is ambiguous. And again, I don't think it's deference per se, but that would be some of the information that would be considered. That would be California administrative law? That would be a California administrative law? Questions of deference. Yes. This is a statute versus a regulation. But you've got a commissioner that approves the plan, right? Yes. All of the plans have to be approved by the commissioner. And again, those factors were all considered by the California legislature in the recent legislation, where they specifically limited the parity requirement to short-term disabilities of 24 months or less. This statute, 101-44, has never been interpreted by any court to require parity of coverage, based on the terms of the statute, that's never been found to be conduct that violates, that would require that an exception be triggered. Instead, none of the prohibited conduct was engaged in in this case. There was no refusal to insure. She obtained the exact same coverage that everybody else did. There was no refusal to continue to insure. The coverage remained available to her under the exact same terms as it was available to every other employee. A failure. Thank you. Thank you. Mr. Sargio will stand submitted.
judges: Parker, Kozinski, Hawkins